**PRUDENTIAL OIL CORPORATION,**
Plaintiff,

v.

**PHILLIPS PETROLEUM COMPANY,**
Defendant.

No. 67 Civ. 3748.

United States District Court,
S. D. New York,
Civil Division.

April 4, 1975.

Thomas R. Farrell, Gold, Farrell & Marks, New York City, for plaintiff.

Robert MacCrate, Sullivan & Cromwell, New York City, for defendant.

## MEMORANDUM

EDELSTEIN, Chief Judge.

Pursuant to Fed.R.Civ.P. 39(a) Defendant has moved this court for an order "striking plaintiff's demand for a jury trial in this action on the ground that under the Seventh Amendment to the United States Constitution, as implemented by Rule 38, F.R.C.P., plaintiff has no right to a jury trial in this action." Defendant's Notice of Motion at 1. Defendant does not object to the timeliness of Plaintiff's jury demand.

Plaintiff's complaint is extremely prolix; thus, for purposes of this memorandum, the court will attempt to deal with the facts as alleged in this complaint as succinctly and simply as it can.

Plaintiff is the assignee of the interest of a corporation that engaged primarily in oil exploration financing. Plaintiff alleges that the Economic Development Administration of Puerto Rico (E.D.A.) desired the establishment of a petrochemical production facility on the Island of Puerto Rico in order to increase general economic growth of the Island. At the time that the operative events in this action occurred, Puerto Rico already had two oil refineries. The project undertaken by the E.D.A. envisaged the construction of a third refinery with satellite petrochemical facilities to utilize the petroleum derivatives from the third refinery. The project was complicated from an economic, financial and political standpoint.

Plaintiff was brought into the transaction by E.D.A. on the recommendation of two New York City investment banking houses after the withdrawal from the initial promotion group of one of its active participants. Plaintiff undertook sponsorship of the project and as part of its activities Plaintiff entered into an arrangement with Defendant whereby

Defendant would supply the crude oil for the project and purchase the refined products not used in the petrochemical operations. Allegedly, Defendant also undertook to furnish consultation in the design, construction and operation of the project. Attached as Exhibit A to the complaint is a letter from Defendant's President to Mr. N. M. Shippee, Chairman of Plaintiff, which states that in connection with the project Phillips is prepared: (1) to provide raw crude oil for the refinery and (2) to purchase refined petroleum products not consumed in the then contemplated petrochemical facilities, and (3) to counsel and assist Plaintiff in the design, construction and operation of the proposed facility. Over a period of a few years Plaintiff and Defendant worked closely on the project. Plaintiff asserts that it divulged to Defendant detailed information that Plaintiff had accumulated as a result of its efforts.

After a period of time it was determined that the plans for an overall petrochemical facility were not feasible in light of the difficulty encountered in obtaining commitments from potential users of petrochemical products from the refinery. Because of this problem the plans for the project were altered by narrowing the project initially "to a 'core' refinery which though designed to produce the maximum yield of petrochemical raw materials to feed various 'satellite' petrochemical plants, would be sufficiently viable to produce larger amounts of normal refinery products during the early years when the 'satellite' and other consuming plants could be installed." It was contemplated that after the refinery was constructed and began operations, petrochemical users could be attracted to build other manufacturing facilities.

Plaintiff contends that in order for the entire project to become feasible it was necessary to obtain an allocation of oil imports from the Department of the Interior, the application for which had to be made by Phillips for reasons not relevant to the instant motion. It is further alleged that some time after the successful application for the change in the Oil Import Regulations, Plaintiff was excluded from the venture by Defendant-Phillips. Phillips and E.D.A. brought the project to a successful conclusion. The refinery that was ultimately constructed was operated by a corporation called "Phillips Puerto Rico Core Co." (Core).

Upon these facts Plaintiff raises four claims for relief, with respect to each of which Plaintiff asserts that it has no adequate remedy at law. Complaint ¶ 39. The first claim is, essentially, that "[p]ursuant to the acts, representations and agreements between Prudential and Phillips, a joint venture was formed between the parties"; that pursuant to the joint venture Plaintiff disclosed to Defendants all of the details, ideas and information which made it possible for the project to be successfully completed; and that Defendant has (a) misappropriated and wrongfully excluded Plaintiff from the fruits of the joint venture, (b) refused to account to Plaintiff for the fruits of the joint venture and to pay over to Plaintiff the business properties, rights and interests acquired by Defendant in its own name but for the account of the joint venture, and (c) by reason of the foregoing, Defendant has breached its agreement and its duty of trust and fair dealing to Plaintiff and holds the fruits of the venture, including the equity interest in Core, for the right and benefit of Plaintiff.

For its second claim, Plaintiff alleges misappropriation by Defendant of ideas, data and the like developed by Plaintiff and disclosed to Defendant pursuant to Defendant's acts, agreements and representations. Alleging that the information was disclosed in trust and confidence to Defendant and to be used solely for Plaintiff's benefit, Plaintiff states that by its misappropriation, Defendant inflicted upon Plaintiff wilful, intentional and malicious harm.

Similar to the second claim, the third claim alleges that Defendant, by its acts, statements and representations, intended to induce Plaintiff, *inter alia*, to disclose its data and to cooperate with Defendant in obtaining the necessary permits and licenses, while concealing its true intention to misappropriate the full benefits of the project and to exclude Plaintiff. Plaintiff alleges that but for such deceitful conduct it neither would have divulged the confidential information to Defendant nor cooperated with it. Finally, Plaintiff alleges that "by reason of the foregoing," Defendant, in equity, holds the fruits of the project on a constructive trust for the benefit of Plaintiff.

For its fourth and final claim, Plaintiff alleges that it refrained from taking any action detrimental to Defendant's efforts to obtain any permits, rights or the like necessary for the establishment of the project. Its forbearance, Plaintiff claims, was directly caused by the acts, representations and agreements of Defendant, "which creates as a fact of equity the right of Plaintiff to share in the fruits and benefits accruing therefrom."

The structure of Plaintiff's prayer for relief reveals Plaintiff's intention that its five subparagraphs are intended to apply to "all" of the claims theretofore raised. It reads as follows:

1. That an accounting be had between plaintiff and defendant Phillips as to the transactions had in joint venture hereinabove alleged and that a division be made of the respective rights and interests of the parties in said joint venture in accordance with their agreements and understandings.

2. That upon completion of such accounting, judgment be entered directing Phillips to pay over to plaintiff all business rights, properties, interest and assets, and particularly, but not limited to, the equity interest in Core, which Phillips holds in its name but for the account and benefit of Prudential.

3. That judgment be entered directing Phillips to account for and pay over to plaintiff all business rights, properties, interests and assets which it holds in its name but for the account and as trustee, constructive or otherwise, for Prudential.

4. That judgment be entered against Phillips awarding to plaintiff recovery of all losses, damages, costs and expenses sustained on account of the claims set forth in the First, Second, Third and Fourth Claims herein, together with interest and reasonable attorneys' fees and costs and disbursements of this action, and

5. That plaintiff be awarded such other and further relief as the Court may deem just and proper.

Broadly speaking, Defendant's answer denied either the allegations outright or sufficient knowledge or information to form a belief as to the allegations of the operative paragraphs of the complaint.

Against this background Defendant's motion must be viewed. For the reasons set forth below the court believes that claims properly triable to a jury exist in the instant action which require that Plaintiff's demand for a jury trial be upheld.

■ The constitutional basis for the right to a jury trial is set forth in the Seventh Amendment:

In Suits at common law, where the value in controversy shall exceed twenty-dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

The preservation of this right is reaffirmed in Rule 38(a) of the Federal Rules of Civil Procedure which provides that "the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate." While few would

dispute that challenges to this right, viewed against the merger of law and equity in the federal courts, have caused courts and commentators serious analytical difficulties over the years, the inescapable teaching of recent Supreme Court decisions is that there is a clear federal policy in light of the Seventh Amendment favoring jury trials and that, in doubtful cases, that policy should be favored. Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L. Ed.2d 44 (1962); Ross v. Bernhard, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2302 at 21 (1971).

■■ In this light it is similarly inescapable that the court in this case must recognize the existence, at least in part, of legal claims, and therefore the propriety of Plaintiff's jury demand. Admittedly, there also exist allegations that might suggest the presence, as well, of equitable claims. However, the Supreme Court has consistently held that where both legal and equitable issues are presented in the same case, and even where the legal issues are considered as "incidental" to the equitable issues, if the demand for a jury is timely and properly made it is to be upheld. Dairy Queen, Inc. v. Wood, *supra*, 369 U.S. at 473, 82 S.Ct. 894. Thus, construing *Beacon Theatres*, the Fifth Circuit has stated that

> [i]t is . . . immaterial that the case at bar contains a stronger basis for equitable relief than was present in Beacon Theatres. It would make no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable. As long as any

legal cause is involved the jury rights it creates control. This is the teaching of Beacon Theatres, as we construe it.

Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp., 294 F.2d 486, 491 (5th Cir. 1961).

With respect to the first "claim," it may reasonably be interpreted as containing "allegations of ordinary breach of contract," Ross v. Bernhard, *supra*, 396 U.S. at 542, 90 S.Ct. at 740, a classic example of a claim cognizable at law. More importantly, without attempting to determine whether there exists only one claim in this case, despite such attempts by both parties, there appears first and foremost and throughout all of the claims which are, essentially, based upon the same set of facts, the allegations that Defendant has, either by the breach of a confidential relationship or through deceit, misappropriated to its own benefit and to the detriment of Plaintiff certain trade or business information developed by Plaintiff. This court agrees with Plaintiff's contention that this presents a legal issue which entitles Plaintiff to a jury trial. *See*, on very similar facts, Bruce v. Bohanon, 436 F.2d 733, 736 (10th Cir.), cert. denied, 403 U.S. 918, 91 S.Ct. 2227, 29 L.Ed.2d 694 (1971) and cases cited therein; Restatement of Torts, § 757 and comments c & f.

■ Much has been said on this motion as to the type of relief sought. This court agrees that while the prayer for relief is not controlling it may be considered on a motion such as the instant one. Ross v. Bernhard, *supra*, 396 U.S. at 538 n. 10, 90 S.Ct. 733; 9 C. Wright & A. Miller, Federal Practice and Procedure § 2304 at 31 (1971).[1] As recited above, that prayer, which is intended to apply to all the claims con-

---

1. As Professors Wright and Miller point out, to the extent that a particular issue may by considered either legal or equitable depending upon the actual remedy awarded, the Supreme Court has indicated that the constitutionally required solution is to have a jury decide the issue, "even though the court may *then* have to determine for itself whether to grant relief of a type historically equitable." 9 C. Wright & A. Miller, Federal Practice and Procedure § 2306 at 37 (1971) (emphasis supplied).

tained in the complaint, contains a demand for, *inter alia, damages.* Coupled with the claims identified above, such a demand "completes" classic legal claims in contract and tort. On this basis alone, Defendant's motion should be denied.

The mere fact that Plaintiff includes in its prayer for relief a demand for an accounting does not alter this decision. As pointed out in *Dairy Queen* and *Bruce, supra,* the labels chosen by the pleader do not control. *See, generally,* 9 C. Wright & A. Miller, Federal Practice and Procedure, § 2310 (1971).

In the *Bruce* case, a jury trial was permitted on a count involving, in part, a prayer for a decree determining Plaintiff's right to participate with Defendant in the project allegedly established as a result of Defendant's misappropriation of Plaintiff's trade secrets and an "accounting covering all *details* pertaining to said project." Complaint at 15 (emphasis supplied). Unlike the instant case where the accounting is sought in addition to and therefore, arguably, in connection with, damages, the only prayer for damages in *Bruce* appeared in the second count which was expressly cast "in the *alternative,* in the event the Court does not grant the *equitable* relief prayed for upon Count I . . . ." Complaint at 18 (emphasis supplied). Thus, it may reasonably be said that, as compared to *Bruce,* the instant case presents an even stronger argument in favor of construing the request for an accounting as, at least in part, one for a money judgment, thus entitling Plaintiff to a jury trial under the principles set forth in Dairy Queen v. Wood, *supra.*

Ross v. Bernhard, *supra,* of course, suggests a third consideration worthy of examination on a motion such as the one before the court: "the practical abilities and limitations of juries." 396 U.S. at 538 n. 10, 90 S.Ct. at 738. Like the Court in *Dairy Queen, supra,* this court has not been persuaded that, upon proper instructions from the trial court, a jury would be incapable of determining the issues given to it.