**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**MISSOURI RIVER BREAKS HUNT CLUB, Dr. George LeTellier, Dr. George Gates, Albert Nelson, T. A. Haugen, John Otten and Russell Dunnington, Defendants-Appellants.**

**No. 78–1736.**

United States Court of Appeals,
Ninth Circuit.

Submitted May 22, 1980.

Decided March 9, 1981.

Robert L. Johnson, Lewistown, Mont., for defendants-appellants.

Robert O'Leary, U. S. Atty., R. E. Murray, Jr., Asst. U. S. Atty., Butte, Mont., for plaintiff-appellee.

Before CHOY and FERGUSON, Circuit Judges, and BARTELS,* District Judge.

CHOY, Circuit Judge:

The United States brought suit to enjoin Missouri River Breaks Hunt Club from trespassing on federal land and to collect damages for the unauthorized use of the land.

---

* The Honorable John R. Bartels, Senior United States District Judge for the Eastern District of New York, sitting by designation.

The district court granted injunctive relief in favor of the United States and the Club appeals. We agree with the district court for the reasons hereinafter stated and affirm the judgment.

## I. Facts

Missouri River Breaks Hunt Club (the Club) has maintained three cabins on the Charles M. Russell Game Range since 1947. The land on which the cabins are located was purchased by the United States through the Army Corps of Engineers subject to a continuing right of occupation now held by Olaf Rindal. That commitment was acknowledged by the Department of the Interior when it assumed management of the range in 1955. A memo from Fred T. Staunton, the range manager, to the Department of the Interior dated July 30, 1965, indicated that in the past the cabin site had been considered a part of the Rindal permit. The record, however, is devoid of any evidence linking the Club's use of the cabin site to the Rindal tenure.

In 1956, after the Department of the Interior took over management of the range, the Club approached Staunton for a permit to use the site. Staunton stated in his deposition of October 24, 1974, that he granted the Club a written permit at that time. The Interior Department files, however, contain no record of any permit being issued, nor can the Club produce a permit. In 1964, the Club approached Staunton for permission to improve the cabins. The Club allegedly made improvements to the cabins at some time prior to June 10, 1967 with Staunton's consent, or knowledge.

Examination of the Department of the Interior files revealed several memoranda regarding the cabins. A memorandum dated July 30, 1965, from Staunton to the

Department's Regional Supervisor, indicates that there was no existing permit for the Club.[1] A memorandum of August 24, 1965 shows that Staunton was authorized to issue a five-year non-renewable permit to the Club. A later memorandum dated August 30, 1965 from the Department of Interior to Staunton countermanded the August 24 memorandum and suggested that the permit not be issued at that time.

Staunton retired at the end of 1966. His successors took no action concerning the cabins until 1974 when Larry Calvert became range manager. Calvert discovered the cabins during an inventory of the range, and on June 18, 1974, he sent letters to members of the Club to determine if they claimed an interest in the cabins. Calvert was subsequently contacted by Arnold Nelson, spokesman for the Club, who advised Calvert that the Club could not produce a copy of the permit authorizing use of the cabins. According to Calvert, Nelson initially said he had never received a written permit and could only recall oral approval by Staunton; Nelson later contacted Calvert and advised him that Staunton had issued a special use permit in 1966 authorizing the cabins in question for an indefinite period of time but that he did not currently have and had never actually seen a copy of the permit. By letters dated June 28, 1974, Calvert informed the Club that the camp was in trespass on the range and must be removed.[2]

## II. Issues

The Club asserts three different points on this appeal.

1. The Club had a right to a jury trial that was improperly denied to it.
2. The evidence was insufficient to support the trial court's finding that no permit had been issued to the Club.

1. The memorandum stated in relevant part:
   Perhaps the thing for us to do would be to issue a separate permit to this group thereby separating this site from the owner permittee. This was considered at one time, but it was felt that if official and separate recognition were given to this use that such action might tend to have a chain reaction resulting in many other requests for cabin site permits.

2. The Secretary of the Interior, as part of a policy of phasing out private use of certain federal lands, including the Charles M. Russell Game Range, required by order dated July 15, 1965 that all trespassers on national wildlife ranges surrender occupancy. See 43 C.F.R. 21.7 (1979).

3. The Government should be estopped from asserting that the Club had no valid permit at the time the improvements were made on the basis of Staunton's representations to the Club and the United States' tolerance of the Club's use of the cabins prior to 1979; and the Club, therefore, should be allowed the 20-year amortization period as provided in 43 C.F.R. § 21.4 (1979).

### III. *The Club's Right to a Jury Trial*

The Club alleges that the district court erred in denying it a jury trial. It appears that the case was initially inadvertently scheduled for trial without a jury, but when objection to that form of trial was made in open court jury selection commenced. During the selection, the district judge invited counsel to chambers for a conference and inquired what factual issues remained for jury determination. The jury was subsequently dismissed. The parties then filed briefs, and the case was deemed submitted to the court on the record.

The Club contends that the jury was excused on agreement that the only issue remaining for trial was a question of law as to which no right to jury trial exists: Granted the issuance of a permit to the Club, was the United States entitled to injunctive relief if the Club could not currently display the permit? It was on this basis, the Club argues, that it agreed to submit the case to the court without a jury. It is the Club's contention, therefore, that the trial judge erred in ruling on the factual issue of whether a permit was ever issued, because the Club was entitled to a jury trial on that issue; their submitting the case to the judge and dismissing the jury did not constitute a waiver of that right when the submission was expressly limited to a legal, not factual, determination.

■ The constitutional right to jury trial does not depend on the character of the overall action, but instead is determined by the nature of the issue to be tried. *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970). There is a right to jury trial when the issue presented in a case would have been heard at common law—*i.e.*, suits in which, historically, legal rights were to be ascertained and determined, in contradistinction to those where equitable rights and remedies were administered. *In re U. S. Financial Securities Litigation*, 609 F.2d 411, 421–22 (9th Cir. 1979), *cert. denied*, 446 U.S. 929, 101 S.Ct. ——, 66 L.Ed.2d —— (1980), *citing Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 446–47, 7 L.Ed. 732 (1830).

In the present case, one of the remedies sought was damages, the traditional form of relief granted by the common law courts. *In re U. S. Financial Securities Litigation*, *supra*, at 423. The Club therefore had a constitutional right to jury trial.

■ The right to jury trial, although protected by constitutional guarantees, is not absolute; it may be waived if a timely demand is not made. Fed.R.Civ.P. 38. Where a demand for jury trial has been made, however, the issues demanded for jury are to be so tried unless

(1) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury or (2) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the United States.

Fed.R.Civ.P. 39(a).

■ The joinder of legal and equitable claims in one action does not constitute a waiver of the right to jury trial as to the legal claim. *Ring v. Spina*, 166 F.2d 546, 550 (2d Cir.), *cert. denied*, 335 U.S. 819, 69 S.Ct. 30, 93 L.Ed. 368 (1948). Under Rule 39(a)(2), if a jury demand includes issues as to which a party is not entitled to jury trial, the court should not strike the demand altogether but should limit it to the issues on which a jury trial was properly sought. *Damsky v. Zavatt*, 289 F.2d 46, 48 (2d Cir. 1961). The record clearly indicates that the

Club made a timely demand for jury trial. *See* Fed.R.Civ.P. 38(b). Under Rule 39(a), issues demanded for jury trial are to be so tried unless the parties stipulate for court trial or the court finds that a right of jury trial on some or all of the issues does not exist.

At trial, the record reflects the following statements:

THE COURT: Very well, we will draw a jury in the case of United States versus Missouri River Breaks, so will you draw the names of 15 jurors, please?

(NOTE: The Clerk of Court then proceeded to draw and announce the names of 15 jurors.)

THE COURT: Ladies and gentlemen, I think there is a problem in this case as to whether it is a jury case or not. I am going to recess for ten minutes and discuss the matter with counsel, so we will be in recess for 10 minutes.

(NOTE: A short recess was taken.)

THE COURT: The parties have agreed to submit the case of the United States versus Missouri River Breaks on the record made, and so the case is withdrawn from consideration by a jury. The Defendant in this case will have ten days within which to file a brief; the United States will have ten days within which to reply and at that time the matter will be deemed submitted.

The Club filed its brief on August 23, 1977, stating in relevant part:

It is defendants' understanding that in the most recent proceedings in chambers the matter was submitted to the court on the theory that the government recognizes defendants have proved a permit for the cabin was issued and the government relies only on the fact defendants cannot produce the permit now.

The Government replied to this in its brief:

The United States has not conceded nor does it now concede that a permit was ever issued. It is the position of the United States that failure to now produce a permit as required by 50 C.F.R. § 25.42 is further evidence that a permit was never issued for the occupancy of the land in question by Missouri River Breaks Hunt Club.

■ The district judge's statement that the parties had agreed to submit the case to the court on the record was sufficient to constitute "an oral stipulation made in open court and entered in the record" as required by Fed.R.Civ.P. 39(a) for a valid waiver of the jury trial right. The Club asserts that the case was submitted pursuant to an agreement, but the United States disputed this in their brief. The Government's brief was filed on August 29, 1977. The judge did not file his opinion and order in the case until October 25, 1977. During these two months, the Club said nothing about its alleged misunderstanding which should have been apparent from a reading of the Government's brief.

In conclusion, we find that the statements made by the district judge without objection from the parties at the time the case was submitted were sufficient to constitute a Rule 39(a) oral stipulation to a non-jury trial. The Club was not improperly denied its right to a jury trial.

## IV. *Sufficiency of the Evidence*

The Club contends that the evidence before the court was insufficient to support the court's finding that no permit had been issued to the Club.[3] The court found that at best the Club's use of the land was a tolerated trespass and was a kind of use

---

**3.** The Opinion and Order of the District Court states in relevant part:

A search of the Government files does not reveal that any permit was ever issued and intra-agency correspondence quite clearly confirms the fact that no written permit ever was issued. Staunton, a one-time Range

manager, stated in an affidavit that he issued a permit of indefinite duration, but his deposition reveals a poor memory of the events, and the documents signed by him while he was Range manager clearly indicate that there was no written permit.

that was terminated by 50 C.F.R. § 26.35 and 43 C.F.R. § 21.7.[4]

The Club argues that the district court's decision is not supported by the evidence. The findings of the trial court cannot be set aside on appeal unless clearly erroneous. Fed.R.Civ.P. 52(a).

■ A finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Kamen & Co. v. Paul H. Aschkar & Co.*, 382 F.2d 689, 694 (9th Cir. 1967), *cert. denied*, 390 U.S. 942, 88 S.Ct. 1021, 19 L.Ed.2d 1129, *cert. dismissed*, 393 U.S. 801, 89 S.Ct. 40, 21 L.Ed.2d 85 (1968), *quoting United States v. United States Gypsum, Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). In this case the range manager, Staunton, states that he issued a written permit to the Club; investigation of the files of the Department of the Interior however reveals no record of any permit having been issued to the Club; nor can the Club itself produce any evidence of a permit. The July 30, 1965 letter from Staunton to the Regional Supervisor indicates that the Club had no written permit. The only documentary evidence suggesting the issuance of a permit was a memorandum of August 24, 1965, authorizing the issuance of a five-year non-renewable permit which was subsequently countermanded by a memorandum dated August 30, 1965.

■ The Club alternatively argues that the cabin was, prior to 1965, considered by the United States to be a part of the Rindal permit, a permit that had considerable tenure at the Range. This argument falls short, however, since the Club has presented no evidence to link the Club's right of occupancy to the Rindal tenure.

Although the evidence was conflicting as to whether a written permit was ever issued, the trial court's finding was not clearly erroneous and therefore must be affirmed.

## V. *Estoppel*

The Club contends that its 27-year term of unmolested use of the land, and its reliance on Staunton's statements that the use was permitted, established grounds for the Government to be estopped from enjoining the Club as a trespasser on the land. By this estoppel claim the Club seeks the application of 43 C.F.R. § 21.4(b) which allows amortization through further use of investments and improvements. The United States argues that the conditions under which it can be estopped do not exist.

■ In order for the Club to raise the estoppel argument on appeal it must have been presented in the trial court. The Club claimed estoppel as a defense in its Answer to the Government's Amended Complaint. But the Club did not pursue the estoppel claim in the lower court nor was it mentioned in the Club's briefs there, and the district judge made no mention of it in his opinion and order. This constitutes a failure to raise estoppel below.[5]

---

4. 50 C.F.R. § 26.35 (1979) states:
   (a) There shall be no new private cabin site permits issued for national wildlife refuges. All appropriate provisions of 43 CFR Part 21 apply to the phaseout of existing permits on national wildlife refuges.
   (b) No new government owned cabin site permits for private recreational purposes shall be issued nor shall existing permits be renewed.
   43 C.F.R. § 21.7 (1979) states:
   Occupants of cabin sites who do not hold a valid permit for the occupancy or use of the site, shall be required to surrender occupancy, failing which legal action shall be taken. Nothing herein shall grant any rights to a trespasser.

5. The Club argues that it should be allowed to amortize its investments in the form of improvements to the cabins pursuant to 43 C.F.R. § 21.4(b) (1979). This section provides in relevant part:
   [E]xcept as otherwise required by law, if an investment was made in a substantial improvement upon a site before the effective date of this part, the extension or renewal of the permit for such site shall be made for a period sufficient to permit 20 years amortization of the investment from the date of the investment in the improvement upon the site.

## VI. *Conclusion*

After a careful review of the record we cannot agree with the arguments made by the Club. The judgment of the district court enjoining the Club's further trespass on the land and ordering the removal of the cabins is AFFIRMED.

The prerequisite to such amortization is that a valid permit was in effect when the improvements were made. Our affirmance of the district court finding that no permit was ever issued precludes any amortization by the Club.