Russell BOWER, et al., Plaintiffs,

v.

The BUNKER HILL
COMPANY, Defendant.

Russell BOWER, et al., Plaintiffs,

v.

GULF RESOURCES & CHEMICAL
CORPORATION, Defendant.

Nos. C–82–412 RJM, C–85–87 RJM.

United States District Court,
E.D. Washington.

Oct. 16, 1986.

Stephen P. Berzon, Fred H. Altshuler, George C. Harris, Altshuler & Berzon, San Francisco, Cal., Robert H. Gibbs, Gibbs, Drachler, Theiler & Drachler, Seattle, Wash., William T. Payne, Daniel P. McIntyre, United Steelworkers of America, Pittsburgh, Pa., for plaintiffs.

William F. Boyd, Evans, Keane, Koontz, Boyd & Ripley, Kellogg, Idaho, Eugene Annis, Annis & Lukins, Spokane, Wash., for defendant Gulf Resources.

William D. Symmes, Witherspoon, Kelley, Davenport & Toole, Spokane, Wash., Stephen W. Greiner, Willkie, Farr & Gallagher, New York City, for Bunker Ltd., and Kendrick.

## MEMORANDUM AND ORDER

ROBERT J. McNICHOLS, Chief Judge.

Defendants have brought several summary judgment motions which will be addressed in the order presented.

### I.

### Statute Of Limitations Defense Against Gulf

Defendants argue that the claim against Gulf based upon the "alter ego" theory arises under section 301 of the LMRA and as such, is governed by the Supreme Court's decision in *DelCostello v. International Brotherhood Of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). *DelCostello* was a consolidated hybrid 301 action brought by three employees. In each case, the employee alleged that his employer had breached a provision of a collective bargaining agreement and that the union had breached its duty of fair representation. The issue presented was what statute of limitations should apply to such suits. The Court held that the action was more closely analogous to a charge of unfair labor practice before the NLRB and thus, applied the six-month statute of limitations contained in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b).

It is clear not only from examining the rationale for the Court's decision, but also from its express language, the Court was not establishing a statute of limitations to govern all labor disputes "[w]e stress that our holding today should not be taken as a departure from prior practice in borrowing limitations periods for federal causes of action, in labor law or elsewhere." *Id.* at 171, 103 S.Ct. at 2294. By this language, the Court left intact its more closely analogous decision in *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). *Hoosier Car-*

*dinal,* was an action to recover accumulated vacation pay that the union claimed had been withheld from discharged employees in violation of the collective bargaining agreement. The Court rejected the employer's argument that section 10(b) should apply and affirmed the lower court's application of a state statute of limitations governing actions for breach of an oral contract. *Id.* at 706–07, 86 S.Ct. at 1113–14. The Court observed that the action was essentially one for damages caused by the employer's breach of an obligation contained in the collective bargaining agreement and as such more closely resembled a common law action for breach of contract. *Id.* at 705, n. 7, 86 S.Ct. at 1113, n. 7.

■ The rule to be culled from the foregoing cases is that the statute of limitations to be applied in a 301 action depends upon the court's characterization of the action in the first instance. If the case is one that touches on the very heart of the labor process as in *DelCostello*, then the six-month period should apply. Such cases fall within the scope of federal policies that favor the prompt resolution of labor disputes and the preservation of harmony between labor and management. The question which remains then is whether an action brought pursuant to section 301 to enforce collectively bargained for employee benefits impacts such interests.

■ In an analogous setting, the Third Circuit held that it did not. *Adams v. Gould*, 739 F.2d 858 (3d Cir.1984), *cert. denied*, 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985). *Adams* involved a dispute over collectively bargained pension benefits. Plaintiffs in essence claimed that the employer and the union entered into a settlement agreement which was contrary to the mandate of an arbitrator's award regarding the benefits. This in turn was claimed to be a violation of the collective bargaining agreement by the employer and a breach of the union's duty of fair representation. The defendants claimed that the action was barred by the six-month statute of limitations contained in § 10(b) of the NLRA.

The court refused to apply the six-month limitations period reasoning that the policies underlying the adoption of the six-month statute viz, the need to resolve disputes which impact on the day-to-day labor-management relationship to preserve labor peace were inapplicable. *Id.* at 867. Instead, the court held that the three-year ERISA statute of limitations, 29 U.S.C. § 1113, should be applied. *Id. See also, Sparks v. Ryerson & Haynes, Inc.,* 638 F.Supp. 56 (E.D.Mich.1986) (following *Adams* in an action brought under ERISA and the LMRA to enforce collectively bargained rights to medical insurance.)

The reasoning of the foregoing decisions is persuasive and fully applicable here. Since plaintiffs filed this action against Gulf on January 22, 1985 and their claims against Gulf arose at the earliest on May 15, 1982, their complaint was timely filed whether this court follows *Adams* or adopts a straightforward application of *Hoosier Cardinal.*[1]

■ This same result would obtain by declining to apply *DelCostello* retroactively. This Circuit has held that *DelCostello* is not to be applied retroactively unless it would have the effect of lengthening the otherwise applicable state statute of limitations. *Aragon v. Federated Dept. Stores, Inc.,* 750 F.2d 1447, 1451 (9th Cir. 1985), *cert. denied,* 474 U.S. 902, 106 S.Ct. 229, 88 L.Ed.2d 229 (1985). Thus, *DelCostello* could only be applied retroactively if the state statute of limitations applicable to plaintiffs' claim were shorter than the six-month statute. Under the analysis set out above, the state statute of limitations applicable to plaintiffs' claim granted them at least three years to bring their claim. Therefore, *DelCostello* would have the effect of shortening the time period and cannot be applied retroactively.

Plaintiffs argue further that even if *Del-Costello* is applicable under the facts and circumstances presented here, they can avoid its impact by amending their complaint in Cause No. C–82–412 to add Gulf Resources. Alternatively, plaintiffs argue that since their claims against Gulf are based upon the "alter ego" doctrine, the timely filing of their complaint against Bunker Hill "tolled" the statute of limitations as to Gulf. In spite of my ruling that *DelCostello* does not apply to the facts and circumstances presented in this case, all parties expressed a desire to have a ruling on the foregoing issues.

■ Plaintiffs' first argument is based upon the relation back provision of Rule 15(c), Fed.R.Civ.P. The Supreme Court recently identified four criteria which must be met before an amended complaint adding additional parties may relate back to the date of filing of the original pleading:

(1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

*Schiavone v. Fortune, aka Time, Inc.,* 477 U.S. 21, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986).

Defendants argue that plaintiffs have failed to meet the third criteria in that they have not established a mistake concerning identity and that Rule 15(c) does not apply when the amendment is for the purpose of adding a party as opposed to adding additional claims against an existing party. The first of defendants arguments has merit. In their initial complaint against Bunker Hill, plaintiffs alleged that Bunker Hill "is a wholly owned subsidiary of Gulf Resources & Chemical Company ..." Thus, the complaint itself is a confession by the

---

1. Under Idaho law, actions on written contracts must be brought within five years and actions on oral contracts within four years. Idaho Code §§ 5–216, 5–217. Washington law provides that actions on written contracts must be brought within six years and actions on oral contracts within three years. R.C.W. §§ 4.16.-040, 4.16.080. Section 413(a)(2) of ERISA, 29 U.S.C. § 1113(a)(2), provides a three year limitations period.

plaintiffs that they were aware of the relationship between Gulf and Bunker Hill.

In the face of this knowledge, to hold that the complaint is entitled to relate back to their initial filing, I would be required to hold that Rule 15(c) was intended to lengthen the time period during which the plaintiffs could engage in discovery to determine the precise role played by an otherwise known party. Such a holding would be contrary to the purpose of Rule 15(c) which was "never intended to assist a plaintiff who ignores or fails to respond in a reasonable fashion to notice of a potential party, nor was it intended to permit a plaintiff to engage in piecemeal litigation." *Kilkenny v. Arco Marine Inc.,* 800 F.2d 853, 857 (9th Cir.1986). Plaintiffs' motion to amend is Denied.

As an alternative basis for avoiding the statute of limitations defense, plaintiffs claim that because Bunker Hill is merely the alter ego of Gulf, the filing of their claim against Bunker operated to toll the statute of limitations against Gulf. I will defer ruling on this question until such time as the relationship is established. In the interim, it would be helpful if the parties would submit copies of any state court opinions upon which they are relying.

## II.

### *Prospective Damages*

Defendants seek a summary determination as to how damages will be calculated in the event the plaintiffs prevail on the issue of liability. Specifically, defendants request the court to rule in advance of trial that plaintiffs will not as a matter of law be entitled to an award based upon an amount equal to the cost of maintaining the plan over its actuarily determined lifespan. The argument is primarily based upon language taken from this court's February 4, 1986 order certifying this case as a class action which defendants now argue is the "law of the case."

Defendants misinterpret the court's order which was merely a response to plaintiffs' suggestion that by adopting an aggregate damages theory, this action

could appropriately be certified pursuant to Rule 23(b)(3), Fed.R.Civ.P. In my order I further indicated that it would be premature to rule on the manner and method for presenting proof of damages. I am still of the opinion that the issue should be left until such time as it arises. Accordingly, defendants' motion for summary judgment on this issue will be denied.

## III.

### *Extra–Contractual and Punitive Damages*

■ Plaintiffs seek recovery of damages for emotional distress and punitive damages under both ERISA and the LMRA. Defendants move for summary judgment as to the punitive damage claims under both the LMRA and ERISA and as to the emotional distress claims under ERISA.

### ERISA

Plaintiffs' claim for extra-contractual and punitive damages under ERISA is based upon § 502(a)(3), 29 U.S.C. § 1132(a)(3). The starting point for analysis of this claim is the language of the statute itself which provides that a civil action may be brought by a beneficiary: "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

The plain language of the foregoing provision admits of no express intention on the part of Congress to provide extra-contractual or punitive damages. This much was noted by the Supreme Court in *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). In *Massachusetts Mutual,* the Court ruled that § 502(a)(2), 29 U.S.C. § 1132(a)(2), did not authorize an award of extracontractual or punitive damages. In reaching its decision, the Court placed great emphasis on the fact that § 1132(a) provided for a comprehensive civil enforcement scheme which the Court stated, it was extremely reluctant to "fine

tune" by reading other remedies into it. *Id.* 105 S.Ct. at 3093.

The Court expressly reserved the issue of whether extra-contractual and punitive damages could be considered "other appropriate equitable relief" within the meaning of § 1132(a)(3). However, this Circuit has characterized the Court's reasoning as suggestive that "extracontractual damages should be unavailable under section 1132(a)(3) as well." *See, Hancock v. Montgomery Ward Long Term Disability,* 787 F.2d 1302, 1307 (9th Cir.1986).

Nevertheless, plaintiffs argue that extracontractual and punitive damages should be an implied remedy under § 1132(a)(3) because ERISA is based upon the common law of trusts which in certain cases allows for extra-contractual or punitive relief. The legislative history accompanying ERISA does indicate that Congress intended to import principles of trust law into the Act. *See,* H.R.Rep. No. 533, 93d Cong., 1st Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News pp. 4639, 4649 ("The fiduciary responsibility section, in essence, codifies and makes applicable to these fiduciaries certain principles developed in the evolution of the law of trusts.")

However clear the legislative referral to trust law principles may be as to fiduciary duties, there is no indication that Congress intended the same referral to trust law for determining remedies. Instead, Congress enacted a very detailed remedial scheme which as noted above, omits any reference to extra-contractual or punitive damages. If anything could be said for Congressional reliance on the law of trusts with respect to drafting the remedies section, it would be that Congress was aware that "equitable remedies" as the term is used in the law of trusts, generally does not encompass extra-contractual and punitive damages and that section 1132(a) was drafted accordingly. *See, Hancock, supra; Sommers Drug Stores v. Corrigan Enterprises, Inc.,* 793 F.2d 1456, 1464 (5th Cir.1986); *Powell v. Chesapeake & Potomac Telephone Co. of Virginia,* 780 F.2d 419, 424 (4th Cir.1985).

Plaintiffs suggestion that extra-contractual damages are a necessary deterrent to an otherwise profitable termination of benefits is unpersuasive. Employers who breach their fiduciary obligations by terminating benefits contrary to the terms of the plan not only expose themselves to liability but can also be forced to pay the opposing side's legal expenses. 29 U.S.C. § 1132(g). Therefore, the statutory scheme fully deters employers from acting contrary to their fiduciary obligations. Accordingly, plaintiffs' demand for extra-contractual and punitive damages under ERISA must be stricken. Defendants' motion for summary judgment on these claims is Granted.

**LMRA**

■ Plaintiffs also argue that they are entitled to the same forms of relief in connection with their claims based upon breach of the collective bargaining agreement. Defendants have moved for summary judgment only as to plaintiffs' demand for punitive damages. The cases cited by both parties recognize as a general rule that punitive damages are not allowed in actions brought pursuant to § 301. *See also, Hotel and Rest. Emp., v. Michelson's Food Serv.,* 545 F.2d 1248, 1254 (9th Cir. 1976) *citing, Local 127, United Shoe Workers v. Brooks Shoe Mfg. Co.,* 298 F.2d 277 (3rd Cir.1962). The reason for denying such a remedy lies in part on the recognition of the general policy of federal labor laws to supply remedies rather than punishments. *Brooks* at 284 (Biggs, J. dissenting).

Plaintiffs cite several cases which they argue establish that there is no per se prohibition against punitive damages in § 301 actions. Several of the cases are of limited usefulness in that they espouse no basis for their holding. Those cases that do serve only to highlight the inappropriateness of punitive damages here. For example, in *Sidney Wanzer & Sons, Inc. v. Milk Drivers U., Local 753,* 249 F.Supp. 664 (N.D.Ill.1966), the court, relying on *Textile Workers Union of America v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1

L.Ed.2d 972 (1957)[2], held that an award of punitive damages would be appropriate when it would have the effect of changing a specific pattern of illegal conduct by a party because under those circumstances, the award would be remedial and serve to cure a specific problem. *Id.* at 670–71. *See also, Butler v. Yellow Freight System, Inc.,* 374 F.Supp. 747, 754 (W.D.Mo.1974) (award of punitive damages appropriate where calculated to deter persistent misconduct and thereby secure industrial peace presently and in future), *rev'd on other grounds, Butler v. Local Union 823, Teamsters,* 514 F.2d 442 (8th Cir.1975).

The logic of the foregoing authorities is clear. Punitive damages will be imposed, if at all, when they will have the salutary effect of advancing the goal of industrial peace. That same consideration can not be said to exist here. The employer-employee relationship is at an end. The only purpose cited by the plaintiffs for the imposition of punitive damages is to deter potential future violators. In this sense, the remedy is sought as punishment and is not appropriate. *Sidney Wanzer* at 668. Accordingly, defendants' motion for summary judgment on this claim is granted.

### IV.

### *Deferred Vested Retirees*

■ In accordance with the requirements of ERISA, a "Summary Plan Description" was distributed to all employees of Bunker Hill. The document described the insurance benefits which were being provided to retirees and contained the following condition for receiving such benefits: "Retired employees are eligible for basic medical benefits only provided they were covered under the active medical plan immediately prior to retirement." Defendants argue that the foregoing language unambiguously excludes from coverage, all employees who had vested pension rights but who left the company for any reason (including layoff) prior to reaching minimum retirement age. Defendants refer to

these employees as the "deferred vested" group and move for partial summary judgment on their claims.

Plaintiffs concede that the above condition does exclude those employees with vested pension rights who voluntarily left the company prior to reaching minimum retirement age. However, they argue that the contract language is at least ambiguous as to whether it also excludes those vested employees who involuntarily left Bunker Hill at the time the company closed. Therefore, they argue that summary judgment is inappropriate. I agree.

Summary judgment is appropriate only if "the contract provision at issue is unambiguous." *Bower v. Bunker Hill Co.,* 725 F.2d 1221, 1223 (9th Cir.1984). A contract provision is ambiguous if it is "susceptible of two reasonable interpretations." *Castaneda v. Dura–Vent Corp.,* 648 F.2d 612, 619 (9th Cir.1981). The Summary Plan Description is silent as to the applicability of the condition at issue in the case of a shutdown of the company. I believe that the interpretation offered by the plaintiffs' is equally tenable, namely, that it was only intended to apply to those employees who voluntarily left the company prior to reaching minimum retirement age.

Ironically, such an interpretation is more consistent with the defendants' position regarding the termination of medical benefits generally. According to the defendants, benefits were to be provided only for the term of each collective bargaining agreement. Assuming such is the case, the inclusion of a provision which would protect the company from claims of employees who were to retire beyond the life of the collective bargaining agreement would appear to be unnecessary.

More importantly, plaintiffs' interpretation has evidentiary support. One of the principal extrinsic aids to contract interpretation is the interpretation that the parties themselves have placed upon it by their conduct. *Laborers Health & Welfare*

---

**2.** In *Lincoln Mills,* the Court directed district courts to fashion appropriate remedies in § 301

cases.

*Trust Fund v. Kaufman & Broad,* 707 F.2d 412, 418 (9th Cir.1983). Plaintiffs have introduced the declarations of three retirees who worked for the Bunker Hill Company at its Pend Orielle mine. At the time the mine closed, these employees had vested pension rights but had not yet reached minimum retirement age. Following their layoff, they were not covered by an active employee medical plan. However, when they reached retirement age, Bunker Hill did provide them with medical insurance. This evidence is entitled to be given great weight.

The foregoing evidence also distinguishes this case from *Local Lodge 2040, Internat'l Ass'n Of Mach. v. Servel, Inc.,* 268 F.2d 692 (7th Cir.1959), *cert. denied,* 361 U.S. 884, 80 S.Ct. 155, 4 L.Ed.2d 120 (1959) which was cited to the court by defendants during oral argument. In *Servel,* the court was simply applying a "reservation of rights" clause to provisions in a collective bargaining agreement which unambiguously conditioned the receipt of various benefits upon continued employment. As noted above, the meaning of the clause at issue here is not similarly unambiguous.

In contrast to the evidence introduced by the plaintiffs, defendants have introduced very little evidence which would support their argument that the provision was intended to apply in the case of a shutdown. To the contrary, all of the documentary evidence cited to by the defendants would appear to lend support only for their argument directed towards the narrower group of future retirees whom the plaintiffs concede were not covered. In short, I believe that the provision at issue is ambiguous and requires further inquiry to determine the parties' intent. Summary judgment on this claim would therefore be inappropriate.

## V.

### Cost of Future Medical Plan

Defendants argue that if plaintiffs prevail on the issue of liability and they are ordered to provide plaintiffs with lifetime medical insurance, the cost of that insurance cannot exceed the average monthly cost which was incurred immediately prior to the plan's termination. Defendants argument rests on the precise issue presented in this litigation, namely, whether the plaintiffs' medical insurance was to continue for their lifetime or whether it was to be limited to the term of the collective bargaining agreements. The existence of this factual question distinguishes this case from those relied upon by the defendants and thus precludes the granting of summary judgment.

### Jury Demand on Alter Ego Claims

Defendants move to strike plaintiffs' demand for a jury as to those claims against Gulf Resources which are based upon the "alter ego" theory. Defendants argue that such claims are equitable in nature and therefore under traditional Seventh Amendment analysis, plaintiffs have no right to a jury trial of these claims. As a further basis for striking the jury demand, defendants argue that the alter ego claims raise questions of public policy that are best suited for determination by the court.

The test employed for determining whether there is a right to a jury trial under the Seventh Amendment is historical in nature. There is a right to a jury trial in those suits in which the rights at stake were traditionally legal and conversely there is no such right when the rights and remedies to be administered were traditionally equitable. *United States v. Missouri River Breaks Hunt Club,* 641 F.2d 689, 692 (9th Cir.1981).

Applying the foregoing analysis to this case is not without certain difficulty. When addressing the nature of the alter ego doctrine, courts and commentators alike rarely address the doctrine's historic origins at any great length. *See, e.g., FMC Finance Corp. v. Murphree,* 632 F.2d 413, 421 n. 5 (5th Cir.1980) ("This Court holds that the issue of corporate entity disregard is one for the jury"); *McCain Foods, Inc. v. St. Pierre,* 463 A.2d 785 (Me.1983) ("The

issue of whether the corporate shield should be disregarded ... is an issue involving the courts' equitable powers") [3]; Worsmer, I.M., "Piercing the Veil of the Corporate Entity," 12 *Colum.L.Rev.* 496, 497–99, 513–514 (noting that the doctrine of piercing the corporate veil has its origins in both law and equity.)

The lack of a clear historical perspective can likely be traced to the obscure nature of the doctrine itself and the many uses to which it has been put. *See, DeWitt Truck Brokers v. W. Ray Flemming Fruit Co.,* 540 F.2d 681, 684 (4th Cir.1976). The Supreme Court's decision in *Bangor Punta Operations v. Bangor & Aroostook R.R.,* 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974) relied upon by the defendants is but one example of how the doctrine has been utilized. In *Bangor Punta,* one corporation which was precluded by equitable principles form suing another in its own right, was attempting to prosecute the action through its subsidiary. In holding that such an action would not lie, the Court remarked that in cert.in cases, "courts of equity, piercing all fictions and disguises, will deal with the substance of the action and not blindly adhere to the corporate form." *Id.* at 713, 94 S.Ct. at 2584.

■ Read in its entirety, I do not believe that the *Bangor Punta* decision can support defendants' position here. In contrast to the *Bangor Punta* decision, the plaintiffs' claim against Gulf Resources demands a money judgment. The remedy sought is an important factor in determining whether a claim is legal or equitable. *Curtis v. Loether,* 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974). Actions for money judgments are traditionally legal in nature. *Dairy Queen v. Wood,* 369 U.S. 469, 477, 82 S.Ct. 894, 899, 8 L.Ed.2d 44 (1962). Moreover, the strong federal policy favoring jury trials provides impetus for finding the right to a jury trial in questionable cases. *See, Prudential Oil*

*Corp. v. Phillips Petroleum Co.,* 392 F.Supp. 1018, 1022 (S.D.N.Y.1975).

■ Defendants additional argument that plaintiffs' claim involves questions of public policy which are better suited for resolution by the court is also unpersuasive. Although plaintiffs must establish that adherence to the corporate form here would result in some injustice, this claim is made with specific reference to particular acts such as "stripping of assets" or "inadequate capitalization" which resulted in the inability of Bunker Hill to meet its actual or potential obligations. These matters present questions of fact which can readily be determined by a jury with appropriate instruction. Accordingly, defendants' motion to strike plaintiffs' jury demand on the alter ego claim is denied.

Based upon the foregoing, it is hereby ordered:

(1) Defendants' motion for summary judgment in favor of Gulf Resources based upon the statute of limitations is Denied. Plaintiffs' motion to amend their complaint in C–82–412–RJM is Denied. The court's ruling on plaintiffs' "equitable tolling" argument will be reserved pending the outcome of the jury trial.

(2) Defendants' summary judgment motion on the issue of prospective damages is Denied.

(3) Defendants' motion to strike plaintiffs' demands for punitive damages and damages for emotional distress under ERISA is Granted. Defendants' motion to strike plaintiffs' demand for punitive damages under the LMRA is Granted. No ruling has been made on plaintiffs' demand for damages for emotional distress under the LMRA.

(4) Defendants' motion for summary judgment against the "deferred vested" retirees is Granted in part and Denied in part.

(5) Defendants' motion for summary judgment on the future cost of medical insurance is Denied.

---

**3.** Parenthetically it should be noted that the right to a jury trial is a question of federal law to which it has been said state law is wholly irrelevant. 9 Wright and Miller, *Federal Practice and Procedure,* § 2303 at 24 (1971).

(6) Defendants' motion to strike plaintiffs' jury demand on their alter ego claim is Denied.

IT IS SO ORDERED.