**William LEA, Don Trevey, Frank Veskerna, William Brown, Paul Murphy, Plaintiffs–Appellants,**

v.

**REPUBLIC AIRLINES, INC., a corporation, Northwest Airlines, Inc., a corporation, successor in interest to Republic Airlines, Inc., Air Line Pilots Association, an association, Defendants–Appellees.**

No. 89–15088.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 14, 1990.

Decided May 3, 1990.

Kevin C. Sewell, Douglas M. Edwards, Edwards, Kolesar & Sewell, Edward J. Hanigan, Las Vegas, Nev., for plaintiffs-appellants.

Gary Green, Eugene B. Granof, Elizabeth A. Ginsburg, Air Line Pilots Ass'n, Washington, D.C., for Air Line Pilots Ass'n.

Richard J. Omata and Gregory C. Sisk, Karr Tuttle & Campbell, Seattle, Wash., for Republic Airlines, Inc.

Before SNEED, FARRIS and FERNANDEZ, Circuit Judges.

SNEED, Circuit Judge:

William J. Lea and four other former airline pilots [1] appeal a summary judgment against them in their suit against Republic Airlines, Inc. (Republic) and the Air Line Pilots Association (ALPA). Appellants claim that Republic, their former employer, violated the Employee Retirement Income Security Act of 1974 (ERISA), and that ALPA, their collective bargaining representative, violated ERISA and breached its duty of fair representation implied under the Railway Labor Act (RLA). Appellants also charged appellees with negligence, breach of contract, and fraud. In addition to monetary damages, appellants seek equitable relief and attorneys' fees. We affirm.

## I.

### FACTS AND PROCEEDINGS BELOW

In late 1983 and early 1984, Republic's financial condition deteriorated. As part of its effort to spur the airline's recovery, Republic entered into negotiations with ALPA aimed at restructuring the company's retirement plans. On March 25, 1984, Republic and ALPA executed an agreement to terminate the Pilots Retirement Income Plan (PRIP). Under the Termination Agreement, the parties would calculate the cost of purchasing annuities to fund all accrued benefits under the PRIP. Because the active pilots had conceded certain benefits during Republic's financial restructuring talks, the parties agreed to rechannel excess assets not needed for the purchase of the annuities from the PRIP back to the active pilots. Republic would then terminate the PRIP and receive a reversion of the residue of funds.

The Termination Agreement went into effect according to plan. In mid-June 1985, Republic began purchasing annuities to ensure that all disabled and retired pilots received benefits at the same rate as before the termination of the PRIP. By June 28, 1985, Republic and ALPA agreed that the PRIP adequately provided all vested and accrued benefits and that the plan could be terminated as agreed. The airline then notified the relevant government authorities and parties of its intention to terminate the plan, effective July 31, 1985. On December 31, 1985, the Pension Benefits Guaranty Corporation issued a Notice of Sufficiency permitting the termination of the PRIP and distribution of the assets.

On July 3, 1985, more than 200 retired pilots (including appellant Frank Veskerna) filed suit in the U.S. District Court in Washington against ALPA and Republic to challenge the Termination Agreement, alleging that it violated the notice and fiduciary provisions of ERISA. The court rejected these claims, holding that Republic and ALPA were not fiduciaries under ERISA and that neither party had violated that statute. *See Hale v. Republic Airlines, Inc.*, No. C85–1261V (W.D. Wash. July 23, 1987). Appeals were filed but dismissed with prejudice by this court in 1989.

Appellants in this lawsuit are former Republic pilots who participated in the PRIP or predecessor plans and who allege they went on disability leave in 1984 and 1985. Appellants claim that the Termination Agreement improperly denied them the additional retirement benefits that it accorded to active pilots. As already indicated, they assert claims for breach of trust, breach of fiduciary duty, negligence, breach of contract, and fraud. They also seek equitable relief. A more complete statement of these claims and the rulings of the district court follows.

### A. *Breach of Trust Claim.*

The gravamen of the pilots' breach of trust claim is that Republic, as administrator of the PRIP, violated ERISA by improperly calculating and distributing the retirement annuities. The district court held that appellants did not present any genuine issues of material fact that necessitated a trial. The court reasoned that the

---

**1.** Donald W. Trevey, Frank J. Veskerna, William A. Brown, and Paul E. Murphy.

parties disagreed not over the salient facts, but rather over how these facts applied to the terms of the PRIP, the Termination Agreement, and ERISA. The court found that "[t]here can be no dispute of the fact that Plaintiffs were on disability status no later than March 25, 1984, prior to the termination of the PRIP." Appellants contend that this ruling was erroneous. They submit that it is disputed whether they were on disability status "no later than March 25, 1984." They cite affidavits that place the disability status of each appellant as occurring at a later date.[2]

### B. Breach of Fiduciary Duty and Duty of Fair Representation Claims.

The district court also rendered summary judgment for appellees on the breach of fiduciary duty claim. The court determined that whether a party is a fiduciary under ERISA is a question of law, not fact, and relied on two Seventh Circuit cases— *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262 (7th Cir.1985) (*UIFO 1*) and *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1274 (7th Cir.1985) (*UIFO 2*). These cases support appellees' contention, the court said, that "the duties and responsibilities of a fiduciary under ERISA are inapplicable to unions and employers negotiating in a collective bargaining context." The court rejected appellants' arguments that (1) ALPA breached its duty of fair representation under the Railway Labor Act, thus violating the spirit of ERISA, and (2) Republic breached its fiduciary duty by implementing the Termination Agreement. *See UIFO 2*, 756 F.2d at 1280.

### C. Contract and Tort Claims.

The district court also ruled that ERISA preempted appellants' causes of action for negligence, breach of contract, fraud, and equitable relief.

### D. The "Hybrid" Claim.

Appellants' last allegation is that ALPA essentially neglected its duty to consider the effects of the Termination Agreement on the disabled pilots by agreeing that the excess assets should go to the active pilots. The district court ruled that this allegation raised a "hybrid" claim under the Railway Labor Act and ERISA, and that a six-month limitations period controlled. *Del-Costello v. International Bhd. of Teamsters*, 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983) (holding that a six-month limitations period applies for breach of duty of fair representation claims under the National Labor Relations Act). The court rejected appellants' contention that ERISA's three-year statute of limitations applies, *see* 29 U.S.C. § 1113(a)(2) (Supp. V 1987), and held the claim as time-barred.

### E. The Veskerna Claim.

Finally, the district court ruled that res judicata barred appellant Frank Veskerna's claims. The court found that he was a plaintiff in the Washington litigation in which retired pilots challenged the Termination Agreement and he did not there dispute that his disabled status entitled him to the add-on benefits awarded to the active pilots.

Appellants challenge these rulings.

## II.

### JURISDICTION

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (1982), inasmuch as it interpreted the appellants to be alleging claims both under the ERISA statute, which confers jurisdiction independently under 29 U.S.C. § 1132(e) (1982), and the Railway Labor Act, which does not independently confer jurisdiction on the federal courts. *See* 45 U.S.C. §§ 151–188 (1982). This court has jurisdic-

---

**2.** William J. Lea, August 1, 1984; Donald W. Trevey, December 1, 1984; Frank J. Veskerna, August 1, 1984; William A. Brown, January 1, 1985; and Paul E. Murphy, July 1, 1985. In their brief, appellants also suggest that the am-

biguity of the plan constitutes grounds for reversal, but at oral argument, they abandoned this position and contended that the plan was unambiguous.

tion over the appeal under 28 U.S.C. § 1291 (1982).

## III.

### STANDARD OF REVIEW

We review district court rulings on motions for summary judgment under a de novo standard. *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989). We also review de novo the decisions of an employee benefit plan administrator in a civil action challenging the plan unless the plan provides otherwise. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989).

## IV.

### DISCUSSION

A. *Breach of Trust Claim.*

The pilots' appeal on the breach of trust issue has two components: first, that the district court erred because the appellants became disabled *after* the relevant date for determining the eligibility of the added benefits; and second, that the court incorrectly concluded that "disabled" pilots should not be treated precisely as were "active" pilots. We address each claim in turn.

1. *Eligibility Date for Active Pilots.*

 Both parties urge us to interpret a plan that they both regard as unambiguous despite the conflicting interpretations each attaches to it. The PRIP does not explicitly supply a date on which pilots were to be classified as "active," "retired," or "disabled" for purposes of distributing the ex-

cess plan assets. The omission is unfortunate because active pilots made certain financial concessions in the collective bargaining negotiations and received added benefits once the PRIP had been terminated. At issue is whether appellants were "active" at a time that would make them eligible for these added benefits.

At oral argument, counsel for appellants maintained that the cutoff date for such a classification was March 29, 1984, whereas counsel for Republic and ALPA argued that the cutoff date was June 30, 1984. We agree with Republic and ALPA. The pilots, on the other hand, urge us to base our conclusion on section 5.2(b) of the PRIP, which provides that March 29, 1984, shall be the determining date for employees who follow the retirement route to ordinary pension benefits. This provision, however, specifically excludes pilots in appellants' class. Section 5.2(d) states that "[a] Participant entitled to a disability benefit shall have his pension determined under Sec. 5.4 rather than under this section." All parties agree that appellants meet the section 5.4(b) definition of "disability."[3] Section 5.4(i) in turn provides that "no disability benefit shall be provided under this section (i) if the occurrence of disability as defined in Sec. 5.4(b) occurs after June 30, 1984, or (ii) if the form 8500 issued in Oklahoma City evidencing failure to pass the FAA medical examination is not filed with the Company on or before June 28, 1985." Each appellant meets these conditions.[4]

Thus, the cutoff date for disability benefits under the PRIP was June 30, 1984. To repeat, each appellant was disabled prior to

---

**3.** This section provides in relevant part: "For purposes of the Plan disability shall be considered to occur when the Pilot first fails to pass an FAA medical examination, that results in the loss of his license to fly as an airline pilot, because of accidental bodily injury or any sickness or disease, including natural deterioration."

**4.** Despite their affidavits, there can be no dispute that all five appellants were "disabled" prior to June 30, 1984, either because their disability occurred prior to that date or the FAA had disqualified them. *See* Clerk's Record No. 31, Exhibit M (William J. Lea, disqualified August

12, 1983); *id.*, Exhibit N (Donald W. Trevey, disqualified April 24, 1984); *id.*, Exhibit O (Frank J. Veskerna, disqualified December 1, 1983); *id.*, Exhibit P (William A. Brown, disqualified February 14, 1984); *id.*, Exhibit Q (Paul E. Murphy, disqualified August 2, 1984). Paul E. Murphy, the only pilot formally disqualified after this date, was "disabled" as of June 22, 1984, because on that date he failed his medical examination. Section 5.4(b) provides that a "disability shall be considered to occur when the Pilot first fails to pass an FAA medical examination."

that date. The district court's finding that they were "on disability" status not later than March 25, 1984, if erroneous, is harmless. The issue thus becomes whether appellants, being disabled, are foreclosed from receiving benefits that accrued to active pilots.

### 2. Does "Disability" Foreclose Being "Active"?

■ Appellants contend that regardless of when they were classified as "disabled," they were not "retired" and under the terms of PRIP they should be considered as "active." Under this reasoning, they are eligible for the added benefits accruing to other active pilots. We interpret the provisions of the PRIP as an integration of all relevant negotiations, a task that would require factfinding only if it is plainly ambiguous. We agree with the parties that the plan is unambiguous.

Section 5.3 (Benefit on Termination of Employment Prior to Normal Retirement Date) provides in pertinent part:

> If a Participant's Termination of Employment occurs before his Normal Retirement Date, if he has a vested percentage greater than zero, and *if he does not receive any payment of the disability benefit described in Sec. 5.4*, he shall be entitled to a pension payable monthly for life ... subject to ...:
>
> . . . . .
>
> (c) A Participant who is an employee of the Company on March 29, 1984 and whose Termination of Employment occurs thereafter shall have the monthly amount of his pension under this section determined in accordance with the provisions of Sec. 5.13.

(Emphasis added.) By this language, appellants are correct when they point out that they are ineligible for the early retirement pensions.[5] They therefore cannot be both "disabled" and on "early retirement."

The PRIP, moreover, also precludes the disabled pilots from being classified as "active" pilots. Section 5.4(g) provides: "Notwithstanding the foregoing, *no disability benefit payment shall be made for any month prior to Normal Retirement Date in which the Participant is an active employee of a Participating Employer.* Whether payments are suspended for months after attaining Normal Retirement Date shall be governed by the provisions of Sec. 5.8." (Emphasis added.) It follows that a pilot cannot be both an "active" employee and "disabled" as appellants contend. He must be one or the other.

If he is disabled, he may regain active status if his disability is ameliorated. The relevant portion of section 5.8, to which section 5.4(g) refers, provides:

> If a Participant has a Termination of Employment and is subsequently reemployed by a Participating Employer, or if a Participant's employment with a Participating Employer continues after he attains Normal Retirement Date, or if the Participant after he attains Normal Retirement Date is in section 202(a)(3)(B) service as defined in section 2530.203–3(c) of the Department of Labor Regulations, the following shall be applicable:
>
> . . . . .
>
> (e) When a Participant's benefit payments resume following any period of suspension, the amount of each payment shall be determined as though the Participant had not previously received pension payments under the Plan; *provided, however, that except in the case of payments under Sec. 5.4 while a Participant is disabled, there shall be an Actuarial Equivalent reduction to reflect payments made prior to Normal Retirement Date.*

(Emphasis added.)

Appellees interpret this provision to mean that, upon reaching the normal retirement age, a pilot on disabled status has a "termination of employment" for purposes of calculating the "Actuarial Equivalent reduction" in his pension. However, the definition of "termination of employment" does not specifically cover pilots on disabled status, as appellants correctly ar-

---

**5.** These issues were litigated in the Washington lawsuit.

gue. Section 3.2 defines this term as follows:

Sec. 3.2 *Termination of Employment.* "Termination of Employment" shall mean termination as an employee of a Participating Employer, Affiliate, or Predecessor Employer and shall be deemed to occur upon resignation, retirement, dismissal, death, failure of an employee to return to active duty at the end of furlough, failure while on furlough to return to active duty when so requested by the employer, or failure to return to active duty at the end of an authorized leave of absence or any authorized extensions thereof. However, Termination of Employment shall not be deemed to occur upon a transfer between any combination of Participating Employers, Affiliates, and Predecessor Employers. Transfer from Southern Airways, Inc. to Republic Airlines, Inc. on July 1, 1979 is not a Termination of Employment.

Appellants argue that because they were never "terminated," under section 3.2, they must continue to be "active," albeit "disabled," and thus eligible for the same benefit "roll ups" that the active but not disabled pilots received. A "disabled" but "active" pilot is a characterization sufficiently oxymoronic to suggest hesitancy in accepting it. Moreover, it ignores the section 5.4(c) mechanism for regaining active status when a formerly disabled pilot passes an FAA physical examination.[6] The structure of the plan would also be illogical were it to ignore at this point the practical distinctions made by the plan and common practices between disabled pilots and those not disabled.[7] The provisions for payment of a monthly disability benefit, for example, provide for a benefit equal to "50% of the average monthly amount paid to the Participant during the last 12 consecutive calendar months *in which he is physically qualified to fly as a Pilot* and for which he received full normal earnings." PRIP § 5.4(e)(1) (emphasis added). This formula obviously assumes that the pilot entitled to a "monthly disability benefit" is no longer physically qualified for service and thus no longer "active."

Finally, the PRIP treats these payments as a pension by providing that "if his disability benefit payments terminate because his disability ceases before his Normal Retirement Date, he shall be entitled to the pension, if any, to which he would be entitled under the Plan had he not been entitled to a pension under this section...." PRIP § 5.4(e)(4). Use of the term "pension" is revealing. Under section 5.1, a pilot receives an "Accrued Monthly Pension" either at the termination of his employment if that date precedes the normal retirement date or at the normal retirement date itself. A pilot cannot receive a pension while he is on "active" service. The language of section 5.4(e)(4) thus distinguishes disabled pilots from active ones because it describes the disability benefits as a "pension," a term that usually refers to payments owing upon a termination of employment or retirement.

We therefore conclude that, although the relevant portions of the PRIP are less explicit than they might have been, the district court did not err in rendering summary judgment for appellees on the breach of trust claim.

### B. *Breach of Fiduciary Duty.*

■ Under ERISA, a person is a "fiduciary" if he or she performs any one of three

---

**6.** Section 5.4(c) provides in pertinent part: "[T]he Company may require him to process promptly an appeal for restoration of his license to fly as an airline pilot through the FAA to any level including its highest appeal level. Disability shall be considered to have ceased upon the restoration of his license, upon his failure to take an FAA physical examination when requested to do so, or upon his failure to process an appeal when requested to do so."

**7.** In the course of their argument on the "hybrid" claim, counsel for appellants make a revealing admission on the meaning of "termination" point. They state that "[i]t was also ALPA who knew that any pilot on disability leave could *return to the company,* within ten years, provided his disability ceased to exist." (Emphasis added.). This statement supports the interpretation that the parties understood that disabled pilots were not also "active" pilots. Otherwise, they would have no need to "return to the company."

functions: (1) exercises discretionary control over fund assets; (2) renders investment advice for a fee; or (3) exercises discretionary control in the management of the fund. 29 U.S.C. § 1002(21) (1982). In this case, neither Republic nor ALPA performed fiduciary functions during negotiations that would expose them to liability for breach of duty.

This case is analogous to *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262 (7th Cir.1985) (*UIFO 1*) and *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1274 (7th Cir.1985) (*UIFO 2*). In *UIFO 1*, the court rejected contentions that the airline and the pilots' collective bargaining agent had breached a fiduciary duty under ERISA. The court concluded that neither party had exercised authority as fiduciaries. *See* 756 F.2d at 1267; *see also UIFO 2*, 756 F.2d at 1280–81.

ALPA's role was confined to the negotiating phase of the Plan. Once that phase ended, ALPA no longer had control over any aspect of the PRIP. Moreover, ALPA was not an ERISA fiduciary simply because it negotiated the termination of the PRIP. *See Young v. Standard Oil (Indiana)*, 849 F.2d 1039, 1045 (7th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 529, 102 L.Ed.2d 561 (1988) (holding that "just because Amoco administered its employees' severance plan, does not mean Amoco owed a fiduciary duty of care to its employees with respect to the amendment or abolishment of that plan"); *see generally Forys v. United Food & Commercial Worker's Int'l Union*, 829 F.2d 603, 607 (7th Cir. 1987) (holding that union is not an ERISA fiduciary when it performs solely the task of presenting claims of individual members).

Similarly, Republic did not perform fiduciary functions; its status as employer does not automatically make it liable as an ERISA fiduciary. *See, e.g., Amato v. Western Union Int'l, Inc.*, 773 F.2d 1402, 1416–17 (2d Cir.1985), *cert. dismissed*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986) (rejecting argument that company breached fiduciary duty simply by being both employer and plan administrator). Nor is it liable here for its role in negotiating the termination of the ERISA plan. *See Young*, 849 F.2d at 1045.

We therefore affirm the district court's rulings that ALPA is not liable as an ERISA fiduciary and that Republic did not breach its fiduciary duty.[8]

C. *ERISA Preemption of Claims for Negligence, Breach of Contract, Fraud, and Equitable Relief.*

■ ERISA's civil enforcement provision, 29 U.S.C. § 1132(a) (1982), creates an exclusive remedial scheme. The Supreme Court has concluded that this provision preempts state law claims brought in conjunction with an ERISA civil enforcement suit: "The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987); *see also Kanne v. Connecticut Gen. Life Ins. Co.*, 867 F.2d 489, 493–94 (9th Cir.1988) (per curiam), *cert. denied*, —— U.S. ——, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989); *Nieto v. Ecker*, 845 F.2d 868, 872 (9th Cir.1988).

We do not read *Pilot Life* to permit state law claims in addition to the claims actionable under ERISA. In that case, the Su-

---

8. The cases cited by appellants are distinguishable. In *Adams v. Gould Inc.*, 739 F.2d 858 (3d Cir.1984), *cert. denied*, 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985), a company underfunded its pension plan to the extent that workers whose pension rights had vested were not able to receive any pension. The court distinguished Third Circuit precedent, both substantively and under the statute of limitations, to permit claims against the company. In *Bower v. Bunker Hill Co.*, 675 F.Supp. 1254 (E.D.Wash. 1986), the court did not address the question of what constitutes fiduciary duty under ERISA. Given that the defendant in that case was a company, the case is not persuasive authority for holding the employees' collective bargaining representative liable for breach of fiduciary duty.

preme Court explained its holding that ERISA preempted state law claims as follows:

> Congress' specific reference to § 301 of the LMRA to describe the civil enforcement scheme of ERISA makes clear its intention that all suits brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans be treated as federal questions governed by § 502(a).... The expectations that a federal common law of rights and obligations under ERISA-regulated plans would develop, indeed, the entire comparison of ERISA's § 502(a) to § 301 of the LMRA, would make little sense if the remedies available to ERISA participants and beneficiaries under § 502(a) could be supplemented or supplanted by varying state laws.

481 U.S. at 56, 107 S.Ct. at 1557. Claims relating to ERISA plans must therefore invoke the specific remedies of ERISA § 502, 29 U.S.C. § 1132 (1982 & Supp. V 1987).[9]

Appellants' second point of attack is that this circuit permits "state-law claims [to be] recharacterized as federal claims if federal law 'provides both a superseding remedy replacing the state law cause of action *and* preempts that state law cause of action.'" *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1497 (9th Cir. 1986) (quoting *Williams v. Caterpillar Tractor Co.*, 786 F.2d 928, 932 (9th Cir. 1986), *aff'd*, 482 U.S. 386, 391, 107 S.Ct. 2425, 2425, 96 L.Ed.2d 318 (1987)).[10] They then assert that *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), authorizes the federal courts to develop a "federal common law of rights and obligations under ERISA-regulated plans." *Id.* 109 S.Ct. at 954 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987)). Accordingly, they suggest that the Supreme Court intended to authorize a "federal common law for ERISA" by permitting ordinary common law claims.[11]

We are not convinced. Courts confronting claims analogous to those raised by the pilots in this case have uniformly held them preempted by ERISA.[12] *See Blau v. Del Monte Corp.*, 748 F.2d 1348, 1356 (9th Cir. 1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985) (holding that state common law claims for breach of contract and implied contract, promissory estoppel, estoppel by conduct, and fraud and deceit are preempted under ERISA); *see also Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1215–16 (8th Cir.),

---

9. Appellants cite *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987), for the proposition that defendants ordinarily raise preemption as a defense to removal of a case from state to federal court. Regardless of the "ordinary" practice, in *Metropolitan Life*, the Supreme Court treated *Pilot Life* as authority for its unequivocal holding that "common law contract and tort claims are pre-empted by ERISA." *Id.* 481 U.S. at 62, 107 S.Ct. at 1546.

10. In its entirety, the passage reads:

> A state law cause of action has been "completely preempted" when federal law both displaces *and* supplants the state law—that is, when federal law provides both a superseding remedy replacing the state law cause of action *and* preempts that state law cause of action.

786 F.2d at 932 (footnote omitted). In its affirmance of this case, the Supreme Court expressly disavowed this very statement. The Court stated: "This analysis is squarely contradicted by our decision in *Avco Corp. v. Machinists*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126

(1968). We there held that a § 301 claim was properly removed to federal court although, at the time, the relief sought by the plaintiff could be obtained only in state court." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 391 n. 4, 107 S.Ct. 2425 n. 4, 2429 n. 4, 96 L.Ed.2d 318 (1987).

11. This argument ignores both the language and the context of the passage. The "federal common law" that the Court envisioned relates to "rights and obligations" under the ERISA plan, 109 S.Ct. at 954, and not to causes of action specifically rejected by *Pilot Life* and *Metropolitan Life*.

12. At the summary judgment hearing, counsel for the pilots appeared to concede as much: "Your Honor, to the extent that the claims were interpreted as or appear that they're State law claims, we don't disagree with that. You know, they should not be included. Clearly we were trying to draft the complaint in terms of ERISA.... If, in fact, we characterized the action incorrectly, we can amend." Transcript, at 24–25.

*cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981) (holding that "[i]f Congress has already provided a remedy for the violation of the former executives' benefit plans, then once Congress has expressed its intention to occupy the field, the state law is preempted, regardless of whether or not a conflict exists which involves a direct interference by the state law with the substantive federal legislation"). We therefore affirm the district court's ruling that appellants' state and common law claims are preempted by ERISA.

### D. Statute of Limitations for the "Hybrid" RLA/ERISA Claim.

■ The Ninth Circuit has adopted a six-month time bar for "hybrid" actions under the RLA. *See, e.g., International Ass'n of Machinists & Aerospace Workers v. Aloha Airlines, Inc.,* 790 F.2d 727, 733–34 (9th Cir.), *cert. denied,* 479 U.S. 931, 107 S.Ct. 400, 93 L.Ed.2d 354 (1986). Virtually every other circuit applies the same rule.[13] Appellants rely on *Adams v. Gould Inc.,* 739 F.2d 858 (3d Cir.1984), *cert. denied,* 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985), and *Bower v. Bunker Hill Co.,* 675

F.Supp. 1254 (E.D.Wash.1986), as authority for their contention that ERISA's three-year limitations period applies to breach of fair representation claims. *See Adams,* 739 F.2d at 867; *Bower,* 675 F.Supp. at 1257. Appellees maintain that a six-month limitations period applies if "the case is one that touches on the very heart of the labor process as in *DelCostello*." *Bower,* 675 F.Supp. at 1256.

In *UIFO 1,* the court applied the six-month limitations period in an action brought by disgruntled officers against ALPA, their collective bargaining representative. The court isolated several key distinctions between *Adams* and the case before it.

[W]e feel that the reasons favoring a departure from *DelCostello* are much weaker where a good portion of the underlying dispute concerns the negotiations and implementation of the plan, as here, rather than the settlement of a grievance taken under a pre-existing plan, as was the case in *Adams.* In addition, we think there are difficulties in limiting DFR [duty of fair representation] challenges to the employment terms of collective bargaining agreements (and

---

**13.** *See, e.g., Smallakoff v. Air Line Pilots Ass'n,* 825 F.2d 1544, 1546 (11th Cir.1987) (per curiam); *Triplett v. Brotherhood of Ry., Airline & S.S. Clerks,* 801 F.2d 700, 702 (4th Cir.1986); *Brock v. Republic Airline, Inc.,* 776 F.2d 523, 526 (5th Cir.1985); *Ranieri v. United Transp. Union,* 743 F.2d 598, 599 (7th Cir.1984); *Barnett v. United Air Lines, Inc.,* 738 F.2d 358, 363–64 (10th Cir.), *cert. denied,* 469 U.S. 1087, 105 S.Ct. 594, 83 L.Ed.2d 703 (1984); *Welyczko v. U.S. Air, Inc.,* 733 F.2d 239, 241 (2d Cir.), *cert. denied,* 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984); *Sisco v. Consolidated Rail Corp.,* 732 F.2d 1188, 1194 (3d Cir.1984); *Hunt v. Missouri Pac. R.R.,* 729 F.2d 578, 581 (8th Cir.1984) (per curiam).

Our analysis is not altered by the recent decision of our court in *Kelly v. Burlington Northern R.R. Co.,* 896 F.2d 1194 (9th Cir.1990). In that case, the court held that the six-month limitations period does not apply in certain situations when the cause of action accrued prior to the announcement of *International Ass'n of Machinists & Aerospace Workers v. Aloha Airlines, Inc.,* 790 F.2d 727 (9th Cir.), *cert. denied,* 479 U.S. 931, 107 S.Ct. 400, 93 L.Ed.2d 354 (1986). We read the *Kelly* standard to apply when the issue

is "whether the six-month rule should apply when the cause of action accrued well before our announcement of the *Aloha* rule, and application of that rule would bar the filing of appellants' action without prior notice." 896 F.2d at 1197. Our case meets neither of these preconditions. The cause of action accrued at the latest when the Pension Benefits Guaranty Corporation issued a Notice of Sufficiency permitting the formal termination of the PRIP on December 31, 1985, only five weeks prior to the announcement of the six-month rule in *Aloha.* If the limitations period commenced upon the December 31, 1985, accrual of their cause of action, application of *Aloha* would not bar appellants' action "without prior notice" because they had at least five months to initiate their hybrid RLA cause of action. Even if we were to decide that equity required a six-month limitations from the date of *Aloha,* which would not be unreasonable under these facts, appellants did not file their lawsuit until July 1987, nearly a year-and-a-half after *Aloha* was handed down. Accordingly, we believe that *Kelly* is readily distinguishable from this case and that the six-month time bar should apply.

to the negotiations leading to them) to six months, but in allowing the pension terms of the same agreements (arising from the same negotiations) to be challenged for up to three years.

756 F.2d at 1273.[14] The *UIFO 1* court's reasons for rejecting *Adams* apply equally well to this case.

*Bower* is also inapposite. That case involved a suit against an employer, not a collective bargaining representative. *See* 675 F.Supp. at 1257. Moreover, both *Bower* and *Adams* involved situations where the company refused to pay retirement benefits that had already vested. Those claims sound more in debt than in equity whereas the reverse is true here. The fundamental complaint of the pilots is that the appellees failed to treat them as "active" pilots for purposes of distributing excess assets of the PRIP.

Because the PRIP was terminated effective July 31, 1985, and appellants filed their complaint on July 17, 1987, the district court correctly ruled that this hybrid Railway Labor Act/ERISA claim against Republic and ALPA was time-barred.

### E. *Application of Res Judicata to Appellant Veskerna's Claims.*

■ Finally, we turn to Veskerna's claim. We review the determination of res judicata under a de novo standard. *Blasi v. Williams*, 775 F.2d 1017, 1018 (9th Cir. 1985) (per curiam). "Under the doctrine of *res judicata*, a final judgment on the merits precludes relitigation of claims which were or could have been raised in a prior action. All issues that were litigated or that might have been litigated as part of the prior cause of action are barred." *International Ass'n of Machinists & Aerospace Workers, AFL–CIO v. Aloha Airlines, Inc.*, 790 F.2d 727, 730 (9th Cir.), *cert. denied*, 479 U.S. 931, 107 S.Ct. 400, 93 L.Ed.2d 354 (1986) (citation omitted). *Accord Greater Los Angeles Council on Deafness, Inc. v. Baldridge*, 827 F.2d 1353, 1360 (9th Cir.1987); *Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1529 (9th Cir.1985) (quoting *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979)).

ALPA argues that Veskerna did not raise the question of his disabled status in the other litigation for the reason that "he did not happen to think of the theory he now advances." The transcript of the proceedings below corroborates the oversight. *See* pages 21–22 (admission by appellants' counsel that he has "a real tough time" with the res judicata issue, because Veskerna's counsel in the other case "didn't realize the distinction between these people, and then I showed him; and I think he understands now"). Oversight erects no bar of res judicata with respect to those claims that could have been pursued in the earlier litigation.

On appeal, Veskerna argues that the *Hale* judgment is void and may not be enforced or serve as a basis for application of res judicata. He cites no authority for this proposition, and, at the time of argument on the summary judgment motion, Veskerna had not moved to set aside that judgment.

We therefore affirm the district court's ruling that appellant Veskerna is barred by res judicata from bringing his claims against appellees in this lawsuit.

AFFIRMED.

---

**14.** *See also International Ass'n of Machinists & Aerospace Workers, AFL–CIO v. Aloha Airlines, Inc.*, 790 F.2d 727, 734 (9th Cir.), *cert. denied*, 479 U.S. 931, 107 S.Ct. 400, 93 L.Ed.2d 354 (1986) (applying *DelCostello* limitation to Railway Labor Act cases).