46 F.3d 1143
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Frank W. ORLANDO, Sr., Plaintiff-Appellant,
v.
HOTEL EMPLOYEES & RESTAURANT EMPLOYEES INTERNATIONAL UNION
WELFARE FUND; American Benefit Plan
Administrators, Defendants-Appellees.
 No. 93-15715.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 3, 1994.
Decided Jan. 11, 1995.
 
 1
 Before: PREGERSON and WIGGINS, Circuit Judges, and LEW, District Judge*
 
 
 2
 MEMORANDUM**
 
 
 3
 Appellant, Frank W. Orlando, Sr., filed an action in Nevada state court alleging a number of actions sounding in tort and contract against the Hotel Employees and Restaurant Employees International Union Welfare Fund ("HEREIU"), and administrators of the fund. HEREIU removed the case to federal court on the basis that its obligations to make the disputed payments were governed by ERISA. The district court granted summary judgment for HEREIU and awarded $1,925 in costs and fees.
 
 
 4
 Orlando appeals the grant of summary judgment as well as the awarding of costs and attorney's fees. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 FACTS
 The Parties
 
 5
 Frank W. Orlando, Sr., is a participant in an employee welfare benefit plan called HEREIU. The fund is established and maintained pursuant to a written Trust Agreement, per ERISA, 29 U.S.C. Secs. 1102-1103, and the Labor-Management Relations Act of 1947, as amended, 29 U.S.C. Sec. 186(c)(5). Mr. Orlando receives health care benefits from Plan 150, which provides benefits in the Las Vegas area.
 
 
 6
 Under Plan 150, health benefits are paid in a different manner depending on whether care is received through the Preferred Provider Organization ("PPO") Plan or the non-PPO Plan. The decision whether to go to a PPO doctor or a PPO hospital lies with the patient/participant. If PPO physicians and hospitals are used, however, the insured is reimbursed at a higher rate.
 
 
 7
 CURB Associates, Inc. ("CURB"), a Nevada corporation, reviews the appropriateness of medical services for which participants request payment. CURB reviews proposed hospitalizations before, during, and after utilization.
 
 The Claim
 
 8
 Orlando developed coronary difficulties in November 1990, and as a result he required aortic and mitral valve replacement in December 1990. His local Las Vegas physician, Dr. Siegel, a participating PPO physician, requested authorization for a hospital admission from CURB on November 26, 1990. Dr. Siegel's office informed CURB that Orlando was requesting to have the surgery out of town, because he had no family in Las Vegas. Dr. Siegel stated that Orlando's family would be of great help to him during his lengthy recovery. CURB approved the medical necessity of the hospital admission and the surgery. However, HEREIU claims that CURB's approval expressly provided that any out-of-town surgery would be reimbursed at the lower, non-PPO rate, because the surgery could be performed locally, at a PPO hospital. HEREIU also claims that CURB informed Dr. Siegel's office, and the Philadelphia surgeon's office, of this qualified approval. At oral argument, Orlando's counsel argued that CURB's permission was not conditioned on reimbursement at the non-PPO rate.
 
 
 9
 Orlando chose to have surgery in Philadelphia. On December 13, 1990, after reviewing Orlando's postoperative recovery, CURB approved the entire hospitalization, consults, and treatment, for payment at the non-PPO rate. Accordingly, Orlando was paid $15,000.00, the maximum hospital benefit payable under the non-PPO Plan. Had Orlando been reimbursed at the PPO rate, he would have recovered over $100,000. Orlando subsequently sued HEREIU for approximately $100,000.
 
 DISCUSSION
 Preemption
 
 10
 The district court ruled that Orlando's claims, all of which were based on state law, were preempted by ERISA. We review this finding de novo. Greany v. Western Farm Bureau Life Ins. Co., 973 F.2d 812, 816 (9th Cir.1992).
 
 
 11
 ERISA contains an extremely broad preemption provision. "Except as provided in [the savings clause], the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. Sec. 1144(a). In Pilot Life Ins. Co. v. Dedeaux, the Supreme Court explained:
 
 
 12
 The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA....
 
 
 13
 The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive.
 
 
 14
 481 U.S. 41, 54 (1987). The Ninth Circuit has since emphasized: "We do not read Pilot Life to permit state law claims in addition to the claims actionable under ERISA." Lea v. Republic Airlines, Inc., 903 F.2d 624, 631 (9th Cir.1990). We have, accordingly, repeatedly preempted state law causes of action. See, e.g., Dytrt v. Mountain State Tel. and Tel. Co., 921 F.2d 889 (9th Cir.1990) (breach of express and implied covenant of fair dealing); Lea, 903 F.2d at 631-33 (negligence, breach of contract, fraud and equitable relief); Johnson v. District 2 Marine Eng'rs Beneficial Ass'n, 857 F.2d 514, 517-18 (9th Cir.1988) (fraud and intentional infliction of emotional distress).
 
 
 15
 Orlando argues, however, that the savings clause of 29 U.S.C. Sec. 1144(b)(2)(A), which provides that state laws "which regulate insurance" are not preempted by ERISA, applies in this case, rendering preemption inappropriate. Orlando argues that Nevada has a comprehensive scheme that regulates insurance, which accordingly should not be preempted.
 
 
 16
 Orlando's argument makes a critical error. It fails to note that the savings clause is qualified by the deemer clause, which clearly mandates preemption in this case. Under 29 U.S.C. Sec. 1144(b)(2)(B), employee benefit plans, and trusts established under such plans, are not considered to be engaged in the business of insurance, and thus the savings clause is inapplicable. The Supreme Court has made clear that ERISA plans that are self-funded fall under this clause. F.M.C. v. Holliday, 111 S.Ct. 403, 409 (1990). These plans thus are not deemed insurance plans, and state laws relating thereto accordingly are not saved by the savings clause. Id. The plan in this case is self-funded. Therefore, the deemer clause overrides the savings clause, and ERISA's broad preemption provision applies. Accordingly, the district court was correct in finding Orlando's state law claims preempted.
 
 Denial of Leave to Amend the Complaint
 
 17
 Orlando contends that he should have been allowed to amend his complaint. A district court's denial of leave to amend a complaint is normally reviewed for an abuse of discretion. Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 798 (9th Cir.1991). When a dismissal of the complaint accompanies the denial of leave to amend, as in this case, the standard may be de novo. Polich v. Burlington Northern, Inc., 942 F.2d 1467, 1472 (9th Cir.1991). But see Contact Lumber Co. v. P.T. Moges Shipping Co., 918 F.2d 1446, 1454 (9th Cir.1990) (using abuse of discretion standard even though dismissal accompanied denial of leave to amend). Under either the abuse of discretion or de novo standard, we affirm the district court's denial of leave to amend the complaint.
 
 
 18
 Under Fed.R.Civ.P. 15(a), a party is allowed to amend its pleading once as a matter of course within twenty days of serving the pleading, or at any time before a responsive pleading is served. After this time period, a party may amend its pleading by leave of the court, and such leave "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). In United Union of Roofers v. Insurance Co. of Am., the court restated Ninth Circuit law concerning amending complaints: "Denial is proper only when amendment would be clearly frivolous, unduly prejudicial, cause undue delay or a finding of bad faith is made." 919 F.2d 1398, 1402 (9th Cir.1990) (citing Moore v. Kayport Packaging Express, Inc., 885 F.2d 531, 538, 539 (9th Cir.1979)).
 
 
 19
 The Moore test supports denial of leave to amend in the instant case. First and foremost, Orlando's counsel's actions demonstrate undue delay, for which he offers absolutely no explanation. This circuit has repeatedly held that "[u]ndue delay is a valid reason for denying leave to amend." Contact Lumber Co., 918 F.2d at 1454; Texaco, Inc., 939 F.2d at 798; Jackson v. Bank of Hawaii, 902 F.2d 1385, 1388-89 (9th Cir.1990). Orlando filed his original complaint in February, 1992. On July 27, 1992, the district court issued a scheduling order, indicating that the last day for amending the complaint was September 25, 1992, and that no late motions to amend would be granted without an exception for good cause shown. On that same day, HEREIU's attorney mailed Orlando's attorney, Massi, a letter stating that the state law claims were preempted by ERISA. Expressing agreement, Massi responded in a letter just two weeks later, stating that he "had no problem with stipulating to dismiss the state law causes of action." However, Massi did not dismiss the state law causes of action, or move to amend the complaint, before the September 25 deadline mandated by the court. Moreover, he made no efforts to amend the complaint for seven months, until February 5, 1993. By this time the amendment period had ended, the discovery period had ended, and HEREIU had prepared a motion (and accompanying memorandum) for summary judgment. Massi has provided no explanation for this delay. In Jackson v. Bank of Hawaii, which involved very similar circumstances, the court found undue delay. 902 F.2d at 1388-89. We do too.
 
 
 20
 The district court's denial of an opportunity to amend the complaint was also proper because any amendment would have been futile. "Leave to amend need not be given if a complaint, as amended, is subject to dismissal." Moore, 885 F.2d at 538; accord Wages v. IRS, 915 F.2d 1230 (9th Cir.1990), cert. denied, 498 U.S. 1096 (1991). Article 11 of the Plan of Benefits provides that if a participant's condition cannot be treated locally at a PPO facility, and if that participant has the approval of CURB, the participant can be treated at a non-PPO facility and reimbursed at the PPO rate. Orlando has failed to produce any evidence showing either that his surgery could not have been performed at a Las Vegas PPO hospital or that CURB granted permission for the out-of-state surgery at PPO rates. Having failed to meet both of these requirements, Orlando's complaint could not have withstood HEREIU's properly supported motion for summary judgment even if he had been given leave to amend.
 
 Evidentiary Issues
 
 21
 Orlando also makes two evidentiary arguments. First he argues that the district court erred by not considering the evidence in the light most favorable to him, the nonmoving party. We reject this argument. As discussed above, Orlando has presented no evidence showing either that CURB granted permission for the out-of-state surgery at PPO rates, or that his surgery could not have been performed at a Las Vegas PPO hospital. Accordingly, his claim must fail.
 
 
 22
 Second, Orlando argues that the district court erred by basing its grant of summary judgment on inadmissible evidence. We reject this claim, as well. Orlando argues that the affidavit of Dr. Stewart, stating that permission was not given for the out-of-town surgery, is hearsay. Although Orlando is correct, in that hearsay evidence cannot properly support a motion for summary judgment, Beyene v. Coleman Sec. Services, Inc., 854 F.2d 1179, 1181 (9th Cir.1988); Fed.R.Civ.P. 56(e), his objection is not timely, and therefore must fail. Appellant has waived his right to challenge this evidence by not doing so before the district court. DeCintio v. Westchester County Medical Center, 821 F.2d 111, 114 (2d Cir.1987), cert. denied, 484 U.S. 965 (1987) ("Rule 56(e) defects are waived where, as here, no motion to strike is directed to them below. As best we have been able to ascertain, the courts that have considered the question are in unanimous accord."); Scharf v. United States Atty. Gen., 597 F.2d 1240, 1243 (9th Cir.1979) ("Such formal defects are waived absent a motion to strike or other objection."); United States v. Dibble, 429 F.2d 598, 603 (9th Cir.1970) (Wright, E., concurring) ("Inadmissible affidavits are no different from inadmissible evidence. They may be stricken in the discretion of the trial judge, but will support a judgment if he elects to consider them and no objection is made."); United States for Use and Benefit of Austin v. Western Electric Co., 337 F.2d 568 (9th Cir.1964) ("No objection was interposed to the use of this declaration at the hearing and counsel for both parties referred to the declaration in their oral argument to the trial court. The declaration would have been subject to a motion to strike. Had appellees made such a motion or otherwise objected to the use of the declaration, the defect could have been remedied by appellants filing an affidavit in lieu of the declaration."); 10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Sec. 2738, p. 509 (1992) ("It is clear that a motion to strike presented for the first time on appeal comes too late.").
 
 
 23
 Moreover, even if this issue were properly presented for the first time on appeal, any error was harmless. Orlando has failed to produce any evidence that he met either requirement for PPO reimbursement--that he got permission for the surgery at PPO rates or that the surgery could not have been performed in Las Vegas. Further, HEREIU's contention on the second requirement, that the surgery could have been performed in Las Vegas, was corroborated by both the Stewart affidavit and an unchallenged Wilhelm affidavit. Lastly, as is described above, all of Appellant's claims were properly preempted by ERISA.
 
 Attorney's Fees
 
 24
 Orlando appeals the district court's grant of attorney's fees of $1,925 to HEREIU pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. Sec. 1927. We review the district court's award of fees pursuant to Rule 11 for abuse of discretion, see United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir.1992), and we affirm.
 
 
 25
 Rule 11 requires that attorneys conduct a reasonable inquiry and determine that any papers filed with the court are well grounded in fact and legally tenable. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990); Fed.R.Civ.P. 11; 28 U.S.C. Sec. 1927. This circuit has written: "If, judged by an objective standard, a reasonable basis for the position exists in both law and in fact at the time the position is adopted, then sanctions should not be imposed." Golden Eagle Dist. Corp. v. Burroughs Corp., 801 F.2d 1531, 1538 (1986).
 
 
 26
 Judged by these standards, the district court did not abuse its discretion in awarding attorney's fees in this case. Had Orlando's counsel acted reasonably, he certainly would have discovered that the governing body of law was ERISA--not Nevada law. The preemption cases cited above were all available when counsel drafted the complaint.
 
 
 27
 Further, HEREIU's counsel notified Massi by letter dated July 27, 1992 that all the state law claims were preempted by ERISA. Massi acknowledged this on August 11, 1992. Nevertheless, when HEREIU filed its motion for summary judgment on January 20, 1993, Massi still had not withdrawn the state causes of action. In sum, Orlando's counsel had no reasonable basis for his position in law or in fact.
 
 
 28
 Orlando's counsel responds lastly that no notice of HEREIU's application for fees was given to him, and that he thus was not afforded an opportunity to object or to request a hearing on the matter. This contention is specifically contradicted by the district court's order of March 10, 1993, granting summary judgment, which stated: "5) Defendants are to file on or before March 15, 1993, an application for attorneys' fees. Plaintiff to respond on or before March 20, 1993." The district court judge noted, on her order assessing attorney's fees, that no such opposition to the application for fees had been filed. Counsel's assertion, then, that he had no opportunity to object to the awarding of fees, is contradicted by the record.
 
 CONCLUSION
 
 29
 For the foregoing reasons, we AFFIRM the district court's grant of summary judgment and award of attorney's fees.
 
 
 
 *
 Hon. Ronald S.W. Lew, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3